[Cite as *Eberbach v. Eberbach*, 2023-Ohio-4102.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Christopher W. Eberbach, | : | |
| Plaintiff-Appellant, | : | No. 21AP-372 |
| v. | : | (C.P.C. No. 15JU-3451) |
| Elizabeth Eberbach, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on November 14, 2023

**On brief:** *Wolinetz, Horvath & Brown, LLC*, and *Dennis E. Horvath*, for appellant. **Argued:** *Dennis E. Horvath.*

**On brief:** *Friedman & Mirman Co., L.P.A.*, *Denise Mirman*, and *Robert A. Letson*, for appellee. **Argued:** *Robert A. Letson.*

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations, Juvenile Branch

DORRIAN, J.

{¶ 1} Plaintiff-appellant, Christopher W. Eberbach ("Father"), appeals from the June 30, 2021 judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, overruling his objections to a magistrate's decision. For the following reasons, we dismiss the appeal.

**I. Facts and Procedural History**

{¶ 2} Father and defendant-appellee, Elizabeth Eberbach ("Mother"), were divorced in the state of Tennessee on May 13, 2011. The parties have three children. Father is self-employed and owns his own company, USA Pay Services ("USA Pay"), which sells

credit card processing. Mother was last employed by USA Pay in 2009; she has not sought employment opportunities since the divorce due to her significant financial holdings.

{¶ 3} The Tennessee divorce decree provided, among other things, that $400,000 of the net proceeds of the sale of the marital home be placed into an educational trust account ("educational account") for the children's benefit. Mother was named custodian and was permitted to use the funds to pay for the children's educational expenses through high school. Permitted use of the funds included, but was not limited to, private school tuition, fees, uniforms, books and computers, as well as uniforms, supplies, activity fees, and all expenses for extracurricular and school activities. Upon request by Father, Mother was required to provide an annual accounting of all expenses paid on behalf of the children from the educational account. In the event funds remained in the educational account after the youngest child graduated from high school, the funds were to be applied toward the children's college education. Any funds remaining after the last child graduated from college, or turned 23 years old, whichever was later, were to revert to the parties to be equally divided.

{¶ 4} A Permanent Parenting Plan Order ("PPPO") was incorporated into the divorce decree. The PPPO set forth the parties' parental rights and responsibilities, including the payment of child support. For child support purposes, Mother's and Father's adjusted gross monthly incomes were calculated at $0 and $27,766, respectively. Father's monthly child support obligation was set at $2,924. The PPPO also acknowledged the $400,000 educational account set forth in the divorce decree.

{¶ 5} On August 20, 2014, the Tennessee court entered an order which permitted Mother to relocate to Columbus, Ohio with the parties' three children and modified the existing PPPO. Under the modified PPPO, Mother's and Father's adjusted gross monthly incomes remained at $0 and $27,766, respectively, for child support purposes. However, Father's monthly child support obligation was increased to $3,020.

{¶ 6} On March 19, 2015, Father filed a petition to register a foreign decree and order in the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch. Father's petition sought registration of the May 13, 2011 divorce decree

and the August 20, 2014 order.  The trial court ultimately confirmed registration of the foreign decree and order on August 6, 2015.[1]

{¶ 7}  On November 17, 2016, Father filed a motion to modify child support on grounds that the parties' financial circumstances had changed since the child support orders were issued in the Tennessee proceedings.  On March 13 and May 14, 2018, respectively, Mother and Father filed motions for attorney fees.

{¶ 8}  Also on May 14, 2018, Father filed two motions related to the educational account.  Both motions were based on Mother's alleged failure to provide an accounting of funds after Father requested one on May 1, 2018.  Father requested the court remove Mother and appoint him as custodian of the educational account and order Mother to provide an accounting.  On June 27, 2018, Father filed a third motion related to the educational account.  Therein, Father alleged Mother had provided an accounting which included only a list of expenses without substantiating receipts; furthermore, the list indicated Mother had used some of the funds for purposes not outlined in the divorce decree.  Father requested the court order Mother to reimburse him for the misused funds, that he control the educational account, and the account be closed with the current balance being released to him.

{¶ 9}  Following the March 28, 2019 amendments to the statutes governing child support, Father, on April 4, 2019, filed a motion to terminate or modify his child support obligation.  On July 30, September 13 and 14, 2018, and April 11 and 12, 2019, a domestic relations court magistrate conducted a hearing on the parties' motions.  The parties and

---

[1] Mother filed an objection to Father's petition on May 8, 2015, arguing that because Father's appeal of the Tennessee court's August 20, 2014 order (on grounds unrelated to issues relevant to the present appeal) remained pending, it would be inconsistent with the purposes of the Uniform Child Custody and Jurisdiction Enforcement Act for the parties to have simultaneous proceedings in two different states; accordingly, the court should not register the August 20, 2014 order until the Tennessee proceedings were completed. On July 24, 2015, the parties filed an agreement which included the following stipulations: (1) Tennessee had jurisdiction when making the original order; (2) issues regarding custody and support had not been modified following resolution in Tennessee; (3) Mother was properly notified of the registration; (4) neither party resided in Tennessee; (5) Mother and minor children reside in Ohio; and (6) Father had met all criteria of the Ohio Revised Code and local rules of court. In addition, the parties stipulated that Mother's objection to the petition was to be submitted to the court. Following a hearing, a magistrate filed a decision recommending denial of Mother's objection and that registration of the foreign decree and order be confirmed. The trial court filed a judgment entry adopting the magistrate's decision on August 6, 2015.

Mother's brother, Matthew Hagman testified, and the parties presented documentary evidence.[2]  Following the hearing, the parties submitted written closing arguments.

{¶ 10}  On September 25, 2019, the magistrate filed a decision addressing the parties' motions.[3]  The magistrate noted that neither party requested findings of fact and conclusions of law.  The magistrate granted, in part, Father's November 17, 2016 motion to modify child support.  The magistrate found Father's total income for purposes of child support, averaged over 2015-17, to be $537,063.67, consisting of wages, interest, dividends, capital gains, and Schedule E income.  The magistrate further found Father failed to present sufficient evidence substantiating the purported business losses claimed on his 2015-16 tax returns.  The magistrate found Mother's total income for purposes of child support, averaged over 2014-17, to be $284,004.25, consisting of imputed wages and rental income,[4] interest, dividends, and capital gains.  The magistrate further found that income derived from Mother's 2017 house-flipping venture was non-recurring; accordingly, it was not included as income for purposes of calculating child support.

{¶ 11} Noting the parties' combined gross income was greater than $150,000 per year, the magistrate averred that Father's child support obligation must be determined on a case-by-case basis, taking into consideration the needs and standard of living of the children and the parents.  After detailing the testimony and evidence presented by the parties regarding their financial holdings, incomes, residences, motor vehicles, lifestyles, and standards of living, as well as the children's mental and physical health and

---

[2] It is undisputed that the parties agreed to limit the scope of discovery related to the child support issues to their tax returns.

[3] In addition to the motions delineated above, the magistrate also considered and ruled on Father's June 22, 2017 motion for an occupational evaluation of Mother; Mother's January 16, 2018 motion to compel discovery; Father's February 21, 2018 motion to strike and/or deny Mother's motion to compel; Mother's April 17, 2018 motion to dismiss Father's November 17, 2016 motion to modify child support; Father's May 16, 2018 motion to modify the case management order; Father's September 4, 2018 motion for additional trial accommodations; Mother's September 7, 2018 motion for protective order/motion in limine; and Mother's October 1, 2018, April 8 and 9, 2019 motions to quash/for protective order/in limine. The magistrate found moot Father's June 22, 2017 and May 16, 2018 motions and Mother's September 7, October 1, 2018, April 8 and 9, 2019 motions. The magistrate denied Mother's January 16 and April 17, 2018 motions, Father's February 21, 2018 motion and Father's July 24, 2019 post-trial motion to strike and redact portions of Mother's closing argument. The magistrate granted Father's September 4, 2018 motion.

[4] The magistrate imputed annual wages of $53,000 to Mother pursuant to a vocational assessment report prepared by an occupational expert and rental income of $900/month ($10,800/annually) attributed to Mother's purchase of a condominium for a homeless woman and her children.

matriculation at private schools, the magistrate found that both parties enjoyed a high standard of living which benefits the children. Addressing Father's request that he pay no child support because Mother had sufficient financial resources to provide for the children via her personal wealth and the educational account, the magistrate found Father still had a statutory obligation to support his children.

{¶ 12} The magistrate determined Father's monthly child support obligation to be $2,020 effective November 17, 2016 and $3,020 effective June 1, 2017. The magistrate noted the parties had agreed, through counsel, to reduce Father's monthly child support obligation from $3,020 (set forth in the Tennessee court's August 20, 2014 order) to $2,020 after the oldest child, C.E., began living with Father in mid-2016. The magistrate further noted that the June 1, 2017 modification was based on C.E.'s emancipation.

{¶ 13} As to Father's April 4, 2019 motion, the magistrate found that pursuant to the child support guideline worksheets applicable under the amended statute, Father's $3,020 monthly child support obligation remained the same. Accordingly, the magistrate denied that motion.[5]

{¶ 14} The magistrate also denied Father's three motions pertaining to the educational account. In doing so, the magistrate noted the applicable provisions in the divorce decree, the testimony and evidence provided by Mother regarding the balances in the two Huntington Bank accounts that make up the educational account (an investment brokerage account and a checking account), her use of the funds in the account, and Father's claims that Mother failed to provide an accounting and misused and misappropriated funds. The magistrate found Mother had provided Father an adequate accounting and Father had failed to produce evidence in support of his misuse/misappropriation claims.

{¶ 15} Regarding attorney fees, the magistrate granted Mother's motion in part and denied Father's motion in full. The magistrate considered the parties' respective incomes, attorney fee invoices, and testimony related to difficulties in obtaining discovery. Specifically, the magistrate found Father did not provide sufficient evidence to support his claim that Mother adversely impacted his efforts to obtain her tax returns from the IRS. The magistrate found merit to Father's claim that Mother caused him to incur additional

---

[5] The magistrate attached applicable child support guideline worksheets to the decision.

attorney fees in investigating her initial failure to disclose her house-flipping income on her 2017 tax filing. The magistrate further found that Father's unreasonable and unjustified claim that he should not be required to pay child support significantly and needlessly increased attorney fees. The magistrate found it equitable that Father pay Mother attorney fees of $5,000 and noted that, but for Mother's actions related to her house-flipping venture, the amount of attorney fees owed by Father would be significantly higher.

{¶ 16} Father filed objections to the magistrate's decision and, with leave of court, later supplemented his objections. Father maintained the magistrate erred in: (1) calculating his income, particularly by failing to offset his income with business losses claimed on his tax returns; (2) calculating Mother's income, particularly by failing to include her house-flipping income and by under imputing rental income; (3) failing to properly consider the parties' standards of living; (4) failing to discredit Mother's budget and 2017 tax return; (5) failing to order a downward deviation of child support to $0; (6) failing to find Mother misused the educational account; (7) failing to require Mother to reimburse him for misused funds from the educational account; (8) failing to award him the educational account; (9) setting Father's monthly child support obligation at $2,020 effective November 17, 2016 and $3,020 effective June 1, 2017; and (10) awarding Mother $5,000 in attorney fees and failing to award him attorney fees.

{¶ 17} Mother also filed objections to the magistrate's decision, arguing the magistrate erred in: (1) calculating her income, particularly by including capital gains as recurring income and over imputing rental income; (2) calculating Father's parenting time; and (3) limiting her attorney fee award to $5,000.

{¶ 18} On May 3, 2021, the trial court held a non-evidentiary hearing on the parties' objections. Following the hearing, on June 30, 2021, the trial court issued an entry denying the parties' objections. As to Father's objections, the trial court determined the magistrate properly calculated Father's income, as Father failed to provide sufficient documentation corroborating his loss of business income for child support purposes. The trial court also determined the magistrate properly considered the parties' standards of living, as the evidence provided by the parties as to their incomes, residences, and automobiles established that both parties live an upper-class lifestyle, despite Father's contentions that he has a middle-class lifestyle. The trial court further determined the magistrate properly

declined to find that Mother misused funds in the educational account, as the evidence established that Mother used funds for purposes expressly contemplated by the divorce decree, and, to the extent she technically misused some of the funds to pay for C.E.'s college expenses prior to the other children graduating high school, such misuse was "negligible." (June 30, 2021 Entry Denying Objs. at 7.) The trial court also found the magistrate properly declined to award the educational account to Father, as the evidence established it was part of the division of the parties' made in the divorce decree, and there was no reservation by the Tennessee court to exercise continuing jurisdiction over the division of property. The trial court additionally determined that sufficient evidence supported the magistrate's child support orders. As to Mother's objection regarding Father's parenting time, the trial court determined Mother failed to request an adjustment of the ten percent reduction in child support under R.C. 3119.051(A).

{¶ 19} Regarding the objections filed by both parties related to the calculation of Mother's income and the award of attorney fees, the trial court determined the magistrate properly calculated Mother's income, as the evidence provided by Mother established that the income from her house-flipping venture in 2017 was non-recurring. Father failed to provide sufficient credible evidence disputing Mother's testimony regarding the imputed rental income, Mother failed to provide sufficient credible evidence regarding her expenses related to the imputed rental income, and the evidence established that a large portion of Mother's total income derived from capital gains. The trial court also determined that the magistrate properly awarded Mother attorney fees of $5,000 and no attorney fees to Father, as the record established that both parties caused some undue delay in the discovery process, and Father caused unnecessary legal fees by requesting a $0 child support order without reasonable justification.

## II. Assignments of Error

{¶ 20} Father appeals and assigns the following six assignments of error for our review:

> I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FAILING TO RULE UPON ALL OBJECTIONS SUBMITTED BY APPELLANT.
>
> II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN RULING UPON APPELLANT'S

OBJECTIONS REGARDING CHILD SUPPORT BY APPLYING THE IMPROPER STANDARD UPON OBJECTION.

III. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ESTABLISHING THE CHILD SUPPORT OBLIGATION.

IV. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FAILING TO REQUIRE APPELLEE TO REIMBURSE MISUSED FUNDS FROM THE EDUCATION FUND.

V. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FAILING TO DESIGNATE APPELLANT AS CUSTODIAN OF THE EDUCATION FUND.

VI. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN MAKING ITS ORDER FOR LEGAL FEES.

## III. Analysis

{¶ 21} In his first assignment of error, Father contends the trial court erred and abused its discretion by failing to rule on all his objections to the magistrate's decision as required by Civ.R. 53(D)(4)(d). Specifically, Father asserts the trial court failed to rule on his objections pertaining to a downward deviation of child support, Mother's budget, and Mother's 2017 tax return. Father maintains the trial court's failure to rule on these objections constitutes both reversible error requiring remand and divests this court of jurisdiction over the appeal, as the court's entry does not constitute a final appealable order. (Father's Brief at 26-27.)

{¶ 22} It is well-settled that an appellate court has jurisdiction to review final orders or judgments of trial courts within its district. *Ohio Dept. of Taxation v. Barney*, 10th Dist. No. 21AP-461, 2023-Ohio-636, ¶ 7, citing *G. Scottco Invest. Co. v. Korleski*, 10th Dist. No. 10AP-582, 2011-Ohio-6656, ¶ 7, citing Article IV, Section 3(B)(2), Ohio Constitution; R.C. 2501.02. If a trial court's order is not a final appealable order, an appellate court lacks jurisdiction and the appeal must be dismissed. *Id.*, citing *Korleski* at ¶ 7, citing *Prod. Credit Assn. v. Hedges*, 87 Ohio App.3d 207 (4th Dist.1993). We agree with Father's contention that this court lacks jurisdiction over this appeal because the trial court's entry does not constitute a final appealable order. However, we conclude the trial court's entry is not a

final appealable order for a reason other than that advanced by Father, i.e., the trial court never expressly entered judgment in the case.

{¶ 23} In *Barney*, this court addressed circumstances similar to those presented in this case:

> In determining our jurisdiction of this appeal * * * we cannot overlook the fact that the trial court never expressly entered judgment for appellee and never ordered the clerk to release the garnished funds. Civ.R. 54(D)(4)(e) provides as follows:
>
> *Entry of judgment or interim order by court.* A court that adopts, rejects or modifies a magistrate's decision *shall also enter a judgment* or interim order. (Emphasis sic.) (Emphasis added.)
>
> " 'In order for a judgment to be final and appealable, a trial court cannot merely adopt a magistrate's decision; it must enter its own judgment that sets forth "the outcome of the dispute and the remedy provided." ' " *Gates v. Praul*, 10th Dist. No. 09AP-123, 2010-Ohio-2062, ¶ 16, quoting *Miller v. McStay*, 9th Dist. No. C.A. 22918, 2006-Ohio-2282, ¶ 4, quoting *Harkai v. Scherbe Industries, Inc.*, 136 Ohio App.3d 211, 218 (9th Dist.2000). "A trial court must enter its own independent judgment, disposing of the matters at issue between the parties so that the parties know of their rights and obligations by referring only to the document known as the 'judgment entry.' " *Gates* at ¶ 16, citing *Conrad v. Conrad*, 9th Dist. No. C.A. 21394, 2003-Ohio-2712, ¶ 4.
>
> Here, the trial court's conclusory paragraph expressly adopts the magistrate's judgment as its own, but does not employ the word "judgment" or any other verbiage terminating the case. The conclusory paragraph also fails to order the relief requested by appellee. It is true that the magistrate expressly ordered the clerk to release the garnished funds to appellee, but " 'only judges, not magistrates, can terminate claims or actions by entering judgment.' " *State ex rel. Boddie v. Franklin Cty. 911 Admr.*, 135 Ohio St.3d 248, 2013-Ohio-401, at ¶ 2, quoting *In re Adoption of S.R.A.*, 189 Ohio App.3d 363, 2010-Ohio-4435, ¶ 17 (10th Dist.) " '[T]he judge must still separately enter his or her own judgment setting forth the outline of the dispute and the remedy provided.' " *Boddie* at ¶ 2, quoting *Harkai* at 218. "[M]erely approving and adopting a magistrate's decision is not enough, the trial judge ' "must still separately enter his or her own judgment setting forth the outline of the dispute and the remedy provided." ' " *In re A.M.*

> 3d Dist. No. 9-19-54, 2020-Ohio-2666, ¶ 11, quoting *Boddie* at ¶ 2, quoting *Harkai* at 218. As this court has previously stated, the trial court's own designation of the order as final and appealable is not dispositive of appellate jurisdiction. *Korleski* at ¶ 9.

*Barney* at ¶ 18-20.

{¶ 24} We concluded that because the trial court did not enter judgment in the case and did not order the requested relief, the judgment entry was not a final appealable order. Accordingly, we dismissed the appeal for lack of jurisdiction.

{¶ 25} In the present case, the conclusory paragraphs of the trial court's June 30, 2021 "Entry Denying Objections" state:

> The Court has reviewed the record, transcript, exhibits, and pleadings in the case for a *de novo* review. The Court does not disturb that Magistrate's determination of credibility of the witnesses as the trier of fact is in the best position to determine credibility. The Court finds no error in the Magistrate's reasoning or application of the law. Based upon the foregoing, Plaintiff's Objections filed October 9, 2019 are hereby OVERRULED and DENIED; Defendant's Objections filed October 18, 2019 are hereby OVERRULED and DENIED. The Court approves and adopts the Magistrate's Decision filed on September 25, 2019.
>
> In the Court's review of the record, the Court notes that Plaintiff filed a Notice of voluntarily [sic] withdrawal of the Motion for Contempt filed on July 2, 2020. Defendant filed multiple motions requesting a protective order. The Court finds that as there is no pending motion or further court dates scheduled for litigation[,] Defendant's Motion for Protective Order filed on April 3, 2020 is MOOT, Defendant's Motion for Protective Order filed on July 10, 2020 is MOOT and Defendant's Motion for Protective Order filed on September 15, 2020 is MOOT.

(Emphasis sic.) (Entry at 10-11.)

{¶ 26} As in *Barney*, the trial court's penultimate conclusory paragraph in the present case expressly approves and adopts the magistrate's decision but does not employ the word "judgment" or any other verbiage terminating the case. *Id*. at ¶ 20. As *Barney* explains, " 'only judges, not magistrates, can terminate claims or actions by entering judgment.' " *Id*., quoting *State ex rel. Boddie v. Franklin Cty. 911 Admr*., 135 Ohio St.3d

248, 2013-Ohio-401, at ¶ 2, quoting *In re Adoption of S.R.A.*, 189 Ohio App.3d 363, 2010-Ohio-4435, at ¶ 17.  Simply approving and adopting a magistrate's decision is inadequate; the trial court must separately enter its own independent judgment outlining the dispute and the remedy provided.  *Id.*

**IV. Conclusion**

{¶ 27}  Because the trial court did not enter its own independent judgment in this case, we find the June 30, 2021 entry is not a final appealable order.  Accordingly, this appeal is dismissed for lack of jurisdiction.

*Appeal dismissed.*

LUPER SCHUSTER and LELAND, JJ., concur.